CYRUS J. HOOD v. FREDERICK H. OLIN, SURVIVOR OF HIMSELF AND EMMOR WARE, COMPOSING THE FIRM OF WARE & OLIN.

[See 68 Mich. 165.]

*Practice in circuit court—New trial—Theory of party—Contract— Sale—Retention of title—Payment.*

1. A party cannot change front, after prosecuting his suit through the courts upon one theory and state of facts, and present a different theory; citing *Hamilton v. Frothingham*, 71 Mich. 617.

2. Plaintiff, as mortgagee of one Nead, replevied a span of horses which he had taken possession of under his mortgage, and which the defendant (for Ware & Olin) rescued by force, claiming ownership of the property; Ware having furnished the team to Nead under a logging contract, but retaining the title until the horses were paid for. The team was furnished to be used on a logging job, and not elsewhere, at the *completion of which* it rested with Nead to say whether he would keep and pay for the team or not, and if so he had the right to apply in payment any balance *then* due him on the contract. Nead did not perform the contract, and, as Ware & Olin claimed, abandoned it, and they took possession, and completed the job, but Nead claimed that such action on their part was wrongful. In reversing the action of the trial court in directing a verdict in favor of the defendant Olin, it is held that the issue *thus* raised was the material question in the case, and, if found in favor of Nead, the state of his account with Ware & Olin

became important to be shown, and the burden of proof was upon plaintiff to show payment, and any testimony having a tendency to prove that fact was admissible.

Error to Mecosta. (Palmer, J.) Argued April 16, 1890. Decided April 25, 1890.

Replevin. Plaintiff brings error. Reversed. The facts are stated in the opinion, and in 68 Mich. 165.

*Dumon & Cogger,* for appellant.

*M. Brown* and *Earle & Hyde,* for defendant.

CHAMPLIN, C. J., After the jury were empaneled in the court below, the plaintiff's attorney opened his case as follows:

" This cause, gentlemen of the jury, is replevin, brought by Mr. Hood against the firm of Ware & Olin to recover possession of one chestnut colored mare, about ten years old; one black gelding, about ten years old,— said team known as the team bought by E. M. Nead of Seaman & Rice; also one set of double harness; one yoke of red oxen, known as the team bought by E. M. Nead of Ware & Olin; also one ox yoke and chain.

" The facts and circumstances in this case we expect to show, briefly stated, are these: Mr. Nead, some time ago, —and I don't remember exactly when, but I think it was on February 9, 1886,—was in possession of this property, and claimed to be the owner of it. On that day he executed a chattel mortgage to Mr. Hood covering this property. In that chattel mortgage was a clause which authorized Mr. Hood, at any time he deemed himself insecure, to take possession of the property, and keep it, and make some final disposition of it, as provided for in the mortgage. A few days after getting this mortgage, Mr. Hood deemed himself insecure, and sent Mr. Overton to Nead's camp, where the property then was,—the camp, I think, was situated at or near Pickerel lake, in this county,—to take possession of this team. He did take possession of it, and delivered it to one Clifford to hold for Mr. Hood; or both teams,—all of the property covered by the chattel mortgage. And they were starting north toward Evart,

or some other place,—Harrison,—to work them in a camp, with Mr. Nead's consent. Mr. Olin claimed that he owned the team, I believe, or that Ware & Olin owned the team; and he took those teams from Clifford, and stated at the time to Mr. Clifford that he had a bill of sale of them; and we expect to show that he had a bill of sale of them from Nead. Mr. Hood brought replevin against the firm of Ware & Olin to recover possession of the property. Mr. Ware died before the pleadings in this case were perfected, and they were perfected against Mr. Olin, the surviving partner of the firm of Ware & Olin. The suit stands in that shape now.

"One of these teams was bought by Nead from Seaman & Rice. There was an arrangement between Mr. Ware and Mr. Olin on one side, made by Mr. Ware, and Mr. Nead, by which or through which Mr. Ware was to furnish him (Nead) a team, or means to pay for a team; and it was to be applied, as we claim, on a lumber contract—a logging contract—which Nead was putting in. After Nead bought these horses, Mr. Ware gave his note to Seaman & Rice; and I presume, in due time, paid the note,—paid for the team. Mr. Nead went on and put in logs,—shingle logs, and lumber logs, etc.,—and, we claim, paid for these teams.

"Inasmuch as the case has once been tried, I don't know but it will give you a better idea of it for us to state that they on the other side claim that Nead has not paid for the teams. It appears to me that the controversy in this case may be whether these teams have been paid for, because they claim, on the other side, that the title to the teams was to remain in Ware & Olin until they were paid for. If I am not mistaken in this issue, in the claims made by the other side, and knowing what we claim, the main question in this case, probably, will be whether those teams have been paid for, and, consequently, whether Mr. Nead had the right to give Mr. Hood a chattel mortgage. It seems to me that will be about the issue in this case."

To support the issue upon his side, he introduced in evidence the chattel mortgage, and also proved the indebtedness for which it was given as security, the fact that he deemed himself insecure, and the taking possession of the property; that defendant, Olin, forcibly took

it from his possession under a claim of ownership, claiming that Nead had given him a bill of sale on December 24 previously. · The defendant introduced testimony tending to show that Mr. Ware, of the firm of Ware & Olin, purchased the horse team, and furnished both teams to Nead under a contract bearing date May 25, 1885, between Nead and Ware; that Ware & Olin were then in partnership in the lumbering business; and that the contract was made for the benefit of Ware & Olin, and that they were jointly interested therein. The items of the contract are set out in the opinion of this Court in 68 Mich. 165.

It will be seen that the issue made was whether the title of the property, at the time the chattel mortgage was executed by Nead to Hood, was in Nead,—the defendant claiming that the title of the property remained in Ware until the teams were paid for by Nead, and that they had not been paid for; and the plaintiff claiming that they had been paid for at that time by performance of the contract. We held when the case was here before that there was no statement in the contract in what manner Ware was to be paid for the teams by Nead. We also held that, by the undisputed testimony, it should be held that Ware furnished both teams, and that the title was in Ware when they were taken to the camp; that Ware was not obliged to take his pay for the teams in work unless he chose to, any more than Nead was obliged to pay for the teams in his labor before he could obtain them. In other words, at any time before the completion of the job, according to the contract, Nead could pay Ware for the teams, and thereupon the title would pass to him.

It is also evident from the contract that the teams were to be furnished to be used by Nead upon the job, and not elsewhere; and it appears, also, as a just and

legal inference, that at the completion of the job it rested with Nead to say whether he would pay for the teams or not; and, further, that if he did choose to keep the teams, and pay for them, he could apply in payment any balance which should then be due to him under the contract. Both parties treated this as the true construction and meaning of the contract. Ware & Olin at once charged the teams as advances made to Nead under the contract, with other advances made; and we held that these, including the teams, were to be accounted for when the contract was performed.

The contract was not fully performed by Nead. He did no work after February 10, 1886; and, if he was in fault for not completing the job in accordance with the contract, the title to the teams never passed to him, and he had no right to mortgage them to secure his debt to Hood. But, if Ware & Olin terminated the contract before the time limited without sufficient cause,—that is without some act or conduct on the part of Nead which would authorize them to terminate the contract,—then Nead had the right to elect to keep the teams, regard them as advances, and to apply in payment therefor, if sufficient for that purpose, the balance due him under and according to the terms of the contract.

The material question, then, was whether Ware & Olin prevented, without justification in law, Nead from performing the contract, or whether Nead forfeited his rights under it by his conduct, or abandoned the performance of it. If the defendants' testimony satisfied the jury that, at the time Ware & Olin took possession, Nead had formed the intention of abandoning the job, and was in the act of carrying out that intent, and had in pursuance thereof, and before they had taken possession, executed this mortgage upon the property as his own, and had begun to haul away his goods with intent to

abandon the work, they were justified in taking posses-
sion and terminating the contract. But if, on the con-
trary, Nead had not formed the intention of abandoning
the contract, but was going on in the performance of it,
they had no right to prevent him from doing so; and he
would have the right, if he was so prevented, to treat
the contract as terminated. Under the facts, as the jury
should find them upon this question, depended the right
of Nead to apply sufficient of the balance due to him for
work under the contract in payment for the teams; and,
if the question was determined in Nead's favor, then the
state of the account between Nead and Ware & Olin
became important to be shown, and the burden of proof
was upon the plaintiff to show payment, and any testi-
mony having a tendency to prove that fact was admis-
sible.

The plaintiff was not at liberty to present a different
issue to be tried than that assumed in his opening to the
jury. The court was right in excluding testimony offered
to prove that Ware or Ware & Olin did not own and
furnish the horse team, or that Nead owned it. We
have held heretofore that a party cannot change front,
after prosecuting his suit through the courts upon one
theory and state of facts, and present a different theory.
*Hamilton v. Frothingham,* 71 Mich. 617.

It was competent for plaintiff to show that defendant
had asserted claims inconsistent with the theory of the
defense set up by him; but he could not show the con-
tents of the bill of sale without first giving notice to
defendant to produce it, and his neglect or refusal to do
so.

The court took the case from the jury on the ground
that it was essentially the same state of facts which were
before us in 68 Mich. 165. What Chief Justice SHER-
WOOD said in that case (p. 175) was:

"I do not think that the state of the account between the parties to the contract, during the continuance of the work provided for therein, had any effect whatever upon the title to the teams, and the court erred in so holding."

This is our holding now; but the question should have been submitted to the jury whether the work under the contract had been terminated, and, if so, by whose act or default, as above pointed out.

The judgment must be reversed, and a new trial ordered.

Morse, Grant, and Cahill, JJ., concurred. Long, J., did not sit.